**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

STANDARD INSURANCE COMPANY, )
)
        Plaintiff, )
)
v. )    Case No.10-CV-146-GKF-PJC
)
ANNA MALOTTE TOWNSEND JOHNSON; )
DEVIN LEIGH HARRIS; BEVERLY )
STEVENS; LETA J. KIM; PATRICIA G. )
STEVENS; CONDIE R. STEVENS; )
JUANITA A. STEVENS; HELEN E. STEVENS, )
HIGH N. STEVENS; and EDDIE PIFFERO, )
)
        Defendants. )

## OPINION AND ORDER

Before the court is the Motion for Summary Judgment of defendant Devin Leigh Harris. [Dkt. #23]. All other defendants object to the motion.

Plaintiff Standard Insurance Company ("Standard") filed this interpleader after it received competing claims to basic life insurance coverage benefits for Ervin Stevens ("Stevens" or "decedent"), who died July 26, 2008. At the time of his death, decedent was a participant in the Global Power Group, Inc. Benefit Plan (the "Plan"), an ERISA-regulated employee welfare benefit plan sponsored by Global Power Equipment Group, Inc. ("Global ") and funded by a group life insurance policy issued by Standard. He was enrolled for Basic Life benefits in the amount of $84,500 (the "Plan Benefits").

Defendant Devin Leigh Harris ("Harris") contends she is the named beneficiary of the life insurance policy. The remaining defendants assert that decedent did not designate a beneficiary. Defendant Anna Malotte Townsend Johnson ("Johnson") claims to be decedent's

only lawful living child, and asserts she is entitled to proceeds from the life insurance policy. Defendants Beverly Stevens, Leta J. Kim, Patricia G. Stevens, Condie R. Stevens, Helen E. Stevens and Hugh N. Stevens are siblings of the decedent, and defendant Eddie Piffero is the half-brother of the decedent. This group of defendants (collectively, the "Siblings") asserts decedent was not Johnson's father, and therefore Johnson is not entitled to the life insurance proceeds.[1]

Harris seeks summary judgment on her claim that she is the designated beneficiary of the policy and is thus entitled to the proceeds at issue.

## I. Material Facts

1. Harris was born in 1983 in Tulsa, Oklahoma, and grew up in Broken Arrow, Oklahoma. Harris knew the decedent as her grandfather and, like everyone who knew him, referred to him as "Steve." [Dkt. #23, Harris's Statement of Fact ¶1; Dkt. #58, Siblings Response at 1; Dkt. #84, Johnson's Supplemental Response at 1].

2. Stevens was not Harris's grandfather by blood, but rather because he and Harris's grandmother, June Vertrees, were married in the early 1980s. [Dkt. #23, Harris's Statement of Fact ¶2; Dkt. #58, Siblings Response at 1; Dkt. #84, Johnson's Supplemental Response at 1].

3. Stevens and Vertrees lived in a house next door to the house that Harris's aunt, Jackie Vertrees, owns. Harris and her brother, Clinton Johnson, lived with their mother, Kay Johnson, in Broken Arrow, approximately 15 miles away, and spent a lot of time with their grandmother and decedent. At age 15, Harris and her mother moved in with Jackie Vertrees. After June Vertrees died, decedent lived in the house by himself until he went back to work for Braden

---

[1] The Siblings assert that in the event this court determines decedent failed to name a beneficiary, the court should order that the insurance proceeds by paid into his estate, and the probate court should determine his heirs. A probate action, Case No. PB-2008-111, is currently pending in the District Court of Muskogee County.

Manufacturing in Mexico. Clinton Johnson lived in decedent's house after decedent went to work in Mexico until September 2010. Since then, Harris has lived in the house decedent and June Vertrees shared in Haskell, Oklahoma. [Dkt. #23, Harris's Statement of Fact ¶3; Dkt. #58, Siblings' Response at 1; Dkt. #84, Johnson's Supplemental Response at 1].

4. Decedent retired from Braden Manufacturing, a subsidiary of Global, in the early 2000s. In 2008, he came out of retirement to go back to work for Braden in Mexico, initially as a contract employee and then, effective April2 28, 2008, as a regular employee. [Dkt. #23, Harris's Statement of Fact ¶7; Dkt. #58, and Ex. B, Depo. of Lori Bates McCauley, 7:16-8:19; Siblings' Response at 1; Dkt. #84, Johnson's Supplemental Response at 1].

5. After decedent went to Mexico, Kay Johnson, Harris's mother, kept in daily contact with decedent through email. [Dkt. #23, Harris's Statement of Fact ¶8, and Ex. C, Affid. of Kay Johnson, ¶7; Dkt. #58, Siblings' Response at 1; Dkt. #84, Johnson's Supplemental Response at 1].

5. Decedent died in Mexico on July 26, 2008. [Dkt. #1, Complaint in Interpleader, Ex. 2, Death Certificate].

**Standard Life Insurance Policy**

6. At the time of his death, decedent was enrolled in a Standard life insurance plan that provided death benefits in the amount of $84,500.00. The benefits were part of an ERISA-regulated employee welfare benefit plan sponsored by Braden's parent company, Global Power. [Dkt. #23, Harris's Statement of Fact ¶8; Dkt. #58, Siblings' Response at 1; Dkt. #84, Johnson's Supplemental Response at 1].

7. The Plan establishes the right of a Plan participant to name his or her beneficiary as follows:

B. Naming a Beneficiary

>Beneficiary means a person you name to receive death benefits. You may name one or more Beneficiaries.
>
>\* \* \*
>
>You may name or change Beneficiaries at any time without the consent of a Beneficiary.
>
>Your beneficiary designation must be the same for Life Insurance and AD&D Insurance death benefits. Your Beneficiary designations for Life Insurance and your Supplemental Life Insurance may be different.
>
>You must name or change Beneficiary in writing. Writing includes a form signed by you or a verification from the Policyholder or Employer of an electronic or telephonic designation made by you.
>
>Your Designation:
>
>1. Must be dated;
>
>2. Must be delivered to the Policyholder or Employer during your lifetime;
>
>3. Must relate to the insurance provided under the Group Policy; and
>
>4. Will take effect on the date it is delivered to the Policyholder or Employer.

[Dkt. #2, Complaint, Ex. 1, Standard Insurance Company, Group Life Insurance Policy, pp. 27-28].

8. Under the terms of the Plan, when there has been no valid designation of a beneficiary, the benefits are to be paid to the surviving beneficiary or beneficiaries in the following order: (1) spouse; (2) lawful living children; (3) father and mother of the member; (4) brother(s) and sister(s) of the member; (5) the estate. [*Id.,* p. 28].

9. Global did not provide employees with a copy of the Plan. [Dkt. #23, Ex. B. McCauley Dep., 63:14-22].

**Decedent's Enrollment in Global Benefits Plans**

10. As a regular employee, decedent became eligible for Global's 401-K plan, life

insurance and accidental death and dismemberment insurance, short term and long term disability benefits, medical and dental insurance, vacation, and a vision plan. [#23, Ex. B. McCauley Dep., 9:18-10:9]. Some of the benefits were paid by the company, and some were "voluntary," i.e., fully paid by the employee. [*Id.,* 10:1-14].

11. Because decedent was working in Mexico at the time he became a regular employee, all of the Human Resources Department's communications with him about benefits were by email. [Dkt. #23, Ex. B., McCauley Dep., 13:5-14:13]. Lori McCauley, Global's Corporate Human Resources Director, sent decedent an email May 2, 2008, advising of his change in status to an employee and stating that she would send him, by email, the employee-related paperwork he would need to review, sign and return to her. [Dkt. #23, Ex. B, McCauley Dep., Ex. 1 thereto].

12. At McCauley's request, Cyrilla Stewart, Global's Payroll HR Coordinator, emailed the paperwork to decedent on May 13, 2008. [Dkt. #23, Ex. B, McCauley Dep., Exs. 2-3 thereto]. Some of the forms were Global forms and some were insurance company forms. [Dkt. #23, Ex. B., McCauley Dep., Exs. 7-8, 13-15]. The paperwork did not include any explanation of benefits. [Dkt. #23, Ex. B., McCauley Dep., 39:5-9]. In email correspondence with decedent on May 14, 2008, Stewart stated, "Let me know if you have questions as you start processing these documents. Would love to be able to go over them with you in person, but time is not allowing that right now." [*Id.,* McCauley Dep., Ex. 4].

13. On Monday, May 19, 2008, Stewart emailed decedent, asking, "How are you coming on the employee paperwork?" [*Id.*, McCauley Dep., Ex. 5]. The same day, decedent responded that he would complete the paperwork "this week" and asked, "When do you really need." [*Id.*]. Steward responded, "I will have to have it by Thursday [May 22]." [*Id.*].

14. On Wednesday, May 21, 2008, decedent emailed the completed forms back to Stewart in one pdf. [*Id.,* McCauley Dep., 19:17-20:23, and Ex. 6]. The forms included a Standard Insurance Company Enrollment and Change Form, a Global Employee Information Sheet, a Global Power Equipment Group Inc. Savings Plan Employee Enrollment Form, a CIGNA Enrollment/Change Form (Consolidated), a W-4 form, an I-9 form. [Dkt. #23, Ex. B, McCauley Dep., Exs. 7, 8, 13-15]. Other than the Standard form, which was misdated with decedent's birth date, the forms that were actually dated bore the date "May 21, 2008." [Dkt. #23, McCauley Dep., 29:9-22; 30:21-31:16, and Exs. 7, 13, 14].

### Standard Enrollment and Change Form

15. The Standard Enrollment and Change Form listed various options for life and disability insurance. [#23, Ex. B., McCauley Dep., Ex. 7]. Global provided "Life with AD& D" insurance coverage at its own cost, and that option had automatically been marked by the computer. [*Id.,* McCauley Dep. 20:24-21:15; 22:3-6, and Ex. 7]. Similarly, Global provided employer-paid long term disability, and that option had also been automatically marked by the computer. [*Id.*, McCauley Dep., 23:2-17, and Ex. 7]. Decedent left blank the boxes electing "Additional/Optional Life," "Dependents Life Insurance," and "Accidental Death and Dismemberment (AD&D) Insurance/Voluntary AD&D." [*Id.*]. He wrote "NA" on lines "Spouse requested amount", "Spouse Name," "Date of Birth," and "Children requested amount." [*Id.*]. The form had a section titled "Beneficiary," which stated:

> This designation applies to Life Insurance available through your employer, if any. Unless specified otherwise on a separate sheet of paper, this designation will also apply to Accidental Death and Dismemberment ("AD&D") Insurance available through your Employer, if any. Designations are not valid unless signed, dated and delivered to the Employer during your lifetime. See p. 2 for further information.

[*Id.*]. Decedent marked "NA" in the box "Beneficiary," on the lines provided for listing primary

6

and contingent beneficiaries. [*Id.*].

16. Decedent's signature appears in the "signature" section of the form, but under the "Date" heading next to the signature, is a date which has been partially redacted so that only the numbers "43" are shown.[2]

## Global Employee Information Sheet

17. On Global's Employee Information Sheet, decedent indicated, "S" for "Marital Status," "0" for "# of children under age 23," and "NA" for "Spouse's name" and "Spouses Birthdate." [*Id.,* McCauley Dep., Ex. 8]. On the line "Life/AD&D Insurance Beneficiary," he listed "Devin Harris," and on the line "Relationship," he stated, "Grand Daughter." [*Id.*].

18. The form did not have a signature line. [*Id.*].

19. The form had a line titled "DATE ISSUED/Employment Date." The line was left blank. [*Id.*]. McCauley testified that ordinarily, Stewart would have filled in the date when the completed document was returned to HR. [*Id.,* McCauley Dep., 28:2-6]. She did not know why Stewart did not do so in this instance. [*Id.,* McCauley Dep., 28:7-19].

## Global Power Equipment Group Inc. Savings Plan Employee Enrollment Form

20. Global provided a form for employees to elect whether and in what amount to contribute to its group savings plan. [*Id.,* McCauley Dep., Ex. 14]. The form also contained a section requiring employees to designate how employee and employer contributions to the plan would be invested. [*Id.*]

21. Decedent checked the box declining to make a salary contribution, did not complete

---

[2]It appears that decedent, who was born in 1943, mistakenly wrote his date of birth instead of the then-current date. [*Id.,* McCauley Dep., 25:23-26:8]. McCauley testified she did not believe the error affected the document because "[I]f there's any question, we still have e-mail correspondence to show that–the date that he actually submitted the document." [*Id.,* 26:17-21].

7

the section designating how contributions were to be invested, and signed and dated the form. [*Id.*]

**CIGNA Enrollment/Change Form (Consolidated)**

22. CIGNA provided health and dental insurance coverage for Global employees. [*Id.,* McCauley Dep., Ex. 13]. Decedent designated only himself for coverage. [*Id.*]. He signed and dated the form May 21, 2008. [*Id.*].

**Completed Forms Are Emailed to Global**

23. The completed forms were attached to an email dated May 21, 2008, from decedent to Stewart. The attachment was titled "Enrollment Change Form Consolidated. Pdf." [*Id.,* McCauley Dep., Ex. 6].

24. On Tuesday, May 27, 2008, decedent emailed to Stewart another signed form acknowledging receipt of Global's employment policies. [Dkt. #23, McCauley Dep., 38:11-39:20]. In his email transmitting the form, decedent stated, "Attached is all that you have requested. Please confirm that this is all you require. Thanks Steve." [*Id.,* Ex. 15]. The same day, Stewart responded, "That should do it! Thank you very much!" [*Id.*].

25. Subsequently, on May 29, 2008, Stewart sent decedent an email, stating, "Even though you have declined the enrollment for the 401K plan...Braden contributes 1% of your wages each payday to the 401K plan. You will need to designate a beneficiary for this plan." [*Id.,* McCauley Dep., Ex. 19]. Decedent responded: "Thanks for the form. I need to E mail Haskell to get addresses and birth dates for the beneficiaries on this. I will do this as soon as possible and scan back to you. We have a holiday tomorrow so this will be sent back early next week." [*Id.*].

26. On June 4, 2008, decedent emailed Stewart, "This is the last of the paperwork that

8

You have asked me to submit." [*Id.,* McCauley Dep., Ex. 20]. Attached was a completed Global Power Equipment Group Inc. Savings Plan Beneficiary Designation Form. The form listed Devin Harris and Clinton Johnson as primary beneficiaries and Kay Johnson as contingent beneficiary of the savings plan. [*Id.*].

27. Global kept the completed forms in decedent's personnel file. [Dkt. #23, Ex. B, McCauley Dep., 6:6-14; 10:15-20].

### Death of Decedent

29. In June 2008, decedent phoned Kay Johnson from the intensive care unit if a hospital in Mexico. He was having heart problems, and asked Johnson to arrange for medical follow up with a cardiologist in Tulsa. [Dkt. #23, Ex. C, Johnson Affid., ¶5].

29. Decedent died in Mexico on July 26, 2008. [Statement of Material Fact ¶ 5, *supra*].

### Competing Claims to Insurance Proceeds

30. After decedent's death, McCauley contacted Kay Johnson, Devin Harris and Clinton Johnson about completing necessary paperwork. [*Id.,* McCauley Dep., 58:12-59:12]. McCauley completed a Life Insurance Benefits Proof of Death Claim Form for Standard listing Devin Harris as decedent's beneficiary. [*Id.,* McCauley Dep., Ex. B at 49:16-50:7, 51:4-14 and Ex. 22]. She testified that she listed Harris as the beneficiary based upon the Global Employee Information Sheet, which listed her as the beneficiary of the life and AD&D insurance, and the 401-K beneficiary form, which also listed Harris as the beneficiary of the 401-K account. [*Id.,* McCauley Dep., 51:4-22]. McCauley further testified:

> Q.: After Mr. Stevens died and you went through his file, you collected some documents that you thought indicated who he wanted to be the beneficiary of his life insurance policy benefits. Would that be fair to say?
>
> A: Well, I think what my position was is that on the form, which I was seeing it for the first time, noted an NA on the Standard Insurance Company. Other

9

documents in his file had Devin Harris named as beneficiary in regards to 401-K. And I use the names and the information provided to me to try to turn in and give Standard the ability to make a decision given it has NA is [sic] the Standard Insurance Company form.

[*Id.,* 52:18-53:6].

31. McCauley attached to the Proof of Death Claim Form various documents, including an Employee Information Sheet that appears to be identical to Exhibit 8 of her deposition, except the notation "3-19-07 as contractor" is written next to the heading on the form and the space for "Emp. #" has been completed. [Dkt. #23-2, Ex. 22 at 74 of 79].

32. On September 2, 2008, Standard sent Devin Harris a letter requesting additional information related to decedent's death. [*Id.,* McCauley Dep., Ex. 24].

33. On September 22, 2008, Standard received correspondence from Anna Malotte Townsend Johnson enclosing a completed beneficiary affidavit for group insurance in which she stated that she was the only lawful living child of the decedent, as well as a copy of her birth certificate, which listed Ervin Stevens as her father. [Dkt. #13, First Amended Complaint ¶24].

34. By letter dated October 16, 2008, counsel for Harris informed Standard that Harris was asserting a claim to the life insurance benefits under the plan. [*Id.*, ¶25; Dkt. #2, Complaint, Ex. 6].

35. Standard notified Johnson and Harris of the competing claims and stated that if the claimants could not settle the matter in a way that would not expose Standard to double liability, it would have to interplead te funds. [Dkt. #23, Ex. 27, November 3, 2008 Letter by Standard].

36. When the claimants were unable to resolve the dispute, Standard filed the instant action. [Dkt. #13, First Amended Complaint ¶28]. At the time Standard filed its Complaint, only Harris and Johnson were named as defendants. [Dkt. #2, Complaint].

37. Subsequently, on July 23, 2010, counsel for Standard received a call from an

attorney representing decedent's siblings stating that the siblings contested Johnson's claim that she is decedent's daughter, and that they intended to assert a claim for the plan benefits. [Dkt. #13, First Amended Complaint ¶30].

38. Standard, in its Amended Complaint, stated, "Because of the potentially adverse claims, The Standard cannot determine the proper beneficiary of or entitlement to the Plan Benefits at issue without risking exposure to multiple liabilities." [Dkt. #13, First Amended Complaint, ¶31].

39. The Siblings dispute Johnson's claim that she is the daughter of decedent. According to Beverly Stevens, decedent's sister, decedent never mentioned to her or her siblings that he had a daughter or that anyone was claiming to be his daughter. [Dkt. #88, Stevens Siblings' Reply to Johnson's Brief in Support of Supplemental Response to Motion for Summary Judgment of Defendant, Devin Leigh Harris, Ex. A, Beverly Stevens Affidavit, ¶¶3-4]. The first the Siblings knew that Johnson claimed to be decedent's daughter was after his death. [*Id.,* ¶5]. Beverly Stevens does not believe Johnson is decedent's daughter. [*Id.,* ¶6].

## II. Analysis

### A. Standard for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden to show that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1984). Summary judgment is appropriate if "there is not sufficient evidence favoring the non-moving

party for a jury to return a verdict for that party." *Celotex,* 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252.

### B. Discussion

Pursuant to 29 U.S.C. §1001, the Standard Plan at issue is governed by the Employee Retirement Income Security Act ("ERISA"). Nevertheless, "ERISA plans are contractual documents which, while regulated, are governed by established principles of contract and trust law. *Blackshear v. Reliance Standard Life Ins. Co.,* 509 F.3d 634, 639 (4th Cir. 2007). ERISA does not preempt the state common law doctrine of substantial compliance. *Peckham v. Gem State Mutual of Omaha,* 964 F.2d 1043, 1052 (10th Cir. 1992). In *Peckham,* the Tenth Circuit explained:

> By definition, the doctrine of substantial compliance does not materially modify a plan, but rather is simply a doctrine to assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance under the contract.

*Id.* citing John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 11-15, at 454 (3d ed. 1987).

Thus, under Oklahoma law, the doctrine of substantial compliance "operates to carry out the intent of the insured where the insured has done all in his power to effect a change of beneficiar[y], and after his death only ministerial acts remain to be performed." *Ivey v. Wood,* 387 P.2d 621, 626 (Okla. 1963) (quotations and citations omitted). With respect to determining whether an insured has done "all in his power" to effect a change of beneficiary, the Oklahoma Supreme Court has commented:

> Such provision in the policy is for the protection of the insurer and not intended to unreasonably circumscribe the right of the insured to change the beneficiary of the policy. This provision of the policy, written by the insurance company

12

> for its protection but having the effect of circumscribing the provision of the
> policy giving the insured the absolute right to change the beneficiary at will
> except in stated cases, should be strictly construed and the acts and conduct
> of the insured should be liberally viewed in favor of the insured in determining
> whether or not he did all within his power to comply with the terms of the
> policy as to change of beneficiary.

*O'Neal v. O'Neal,* 141 P.2d 593, 597 (Okla. 1943).

In *Wiley v. United States,* 399 F.2d 844, 846-47 (10th Cir. 1968), the Tenth Circuit stated:

> We have adopted the substantial compliance doctrine under which attempts by
> an insured to change the beneficiary will be liberally construed if the intention
> to effectuate the change is complimented by an affirmative act reasonably
> tending to manifest such an intent. In such a case, technicalities will not be
> permitted to thwart the express desire of the insured. In short, the insured
> need not comply literally with all administrative technicalities so long as he
> might reasonably be supposed to have thought his actions sufficient under
> the circumstances.

In *Wiley,* the insured had originally named his then-wife as a beneficiary of two National Service Life Insurance policies issued in 1942 and 1943. *Id.* at 845. In 1948, he was declared to be incompetent and for some years thereafter was a patient in various hospitals. *Id.* The two were in divorced in 1950. *Id.* In 1962, the insured executed an official change of beneficiary form in which his sister was named as the beneficiary of both policies. *Id.* The change of beneficiary form did not specifically refer to either policy number, but the Veterans Administration file number for both of the policies was written in the space provided for the insured's file number, as well as in the space provided for the number of the policy on which the change was desired. *Id.* In holding that the sister was entitled to proceeds of the policy, the court stated:

> The information supplied adequately identified both policy locations and
> reflected the insured's intention to change the beneficiary on all the insurance
> therein. To hold that the insured's failure to identify both policies by number
> was insufficient to work a beneficiary change, would not only penalize the
> insured for the slovenly handling of the matter by the Veterans Administration,
> but would be a repudiation of the oft stated principle that in circumstances

13

> such as these, literal compliance with the technical requirements established by regulation for accomplishing a change of beneficiary is not essential.
>
> Accordingly, we hold that the insured's manifest intent, when accompanied by the affirmative act of executing the official change of beneficiary form, was sufficient to accomplish a beneficiary change even though the form was technically incomplete in that it failed to include the correct policy numbers.

*Id.* at 847.

Here, decedent, whether intentionally or mistakenly, failed to name either a primary or a secondary beneficiary on the Standard Enrollment and Change Form. Nevertheless, under the terms of the Standard policy, and consistent with the instruction on the Enrollment and Change Form, he was permitted to change his beneficiary by a written, signed, dated designation delivered to his employer. Decedent listed Devin Harris as the beneficiary of his life and AD&D insurance policy on the Global Employee Information Sheet executed and transmitted to Global at the same time as the Standard form. The question, then, is whether this designation "substantially complied" with the terms of Standard's policy. Considering the circumstances under which the forms were completed, the court concludes it did.

Decedent was sent several forms and instructed to complete, scan and return the forms by email. He was in Mexico, and Global's HR people were in Tulsa. Global's HR representative was urging him to complete and return the forms before the next payroll. The Employee Information Sheet completed by decedent clearly designated Devin Harris as the beneficiary of his life and AD&D insurance policy. Although the form was not signed and dated, there is no dispute that it was scanned and emailed by decedent back to Global along with the Standard form and other paperwork on May 21, 2008. Thus, notwithstanding the technical deficiencies in decedent's designation, he "might reasonably be supposed to have thought his actions sufficient under the circumstances." *Wiley,* 399 F.2d at 847.

Citing correspondence Standard sent her, Johnson argues that the insurer did not consider the naming of Harris as his beneficiary in the Global Employee Information Sheet was a valid beneficiary designation under the policy terms. However, Standard's opinion is not relevant to resolution of the dispute before the court. The policy requirements for the change of a beneficiary are meant to protect Standard from competing claims for proceeds. *O'Neal,* 141 P.2d at 597. Here, the insurer has protected itself by interpleading the policy proceeds. Thus, the critical inquiry is the intent of the decedent.

The court concludes, based on these facts and the circumstances at the time of his enrollment, that while decedent did not comply literally with all administrative technicalities, his actions manifested his intent to designate Devin Harris as the beneficiary of his life and AD&D policy.

### III. Conclusion

For the reasons set forth above, defendant Harrris's Motion for Summary Judgment [Dkt. #23] is granted.

ENTERED this 8th day of September, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma